ANDREW E. ARATA; ROCQUE PUCCI; AND SHERRI A. PUCCI, APPELLANTS, v. BETTY S. FAUBION, RESPONDENT.

No. 43993

June 28, 2007                           161 P.3d 244

---

[20]We have considered Ellis's remaining arguments and we conclude that they are without merit.

[Rehearing denied November 5, 2007]

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg* and *Joel D. Henriod*, Las Vegas; *Barron, Vivone & Pruitt* and *David L. Barron*, Las Vegas; *Tamela L. Kahle*, Las Vegas, for Appellants.

*Vannah & Vannah* and *Matthew R. Vannah* and *Robert D. Vannah*, Las Vegas, for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, MAUPIN, C. J.:

In this appeal, we consider the constitutionality of NRS 41.440, which imposes vicarious liability on motor vehicle owners who

loan their vehicles to immediate family members. We also consider whether, under the facts of this case, the district court erred in concluding, as a matter of law, that a stepfather and a biological mother are the immediate family members of an adult son for purposes of imposing vicarious liability under NRS 41.440. For the reasons stated below, we affirm the judgment and order of the district court in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In January of 1999, appellant Andrew Arata struck respondent Betty S. Faubion in a pedestrian crosswalk while driving a vehicle owned by his mother and stepfather, appellants Sherri and Rocque Pucci.

At the time of the accident, Arata was nineteen years old and living in the Puccis' residence.[1] The Puccis owned four vehicles, including a pickup truck that they purchased for Arata and a sports utility vehicle (SUV) driven predominately by Sherri Pucci. Arata was a named insured on the motor vehicle liability policies that covered the family vehicles.

On the morning of the accident, Arata drove the Puccis to the airport in the SUV on his way to work. Rather than return home to retrieve his own vehicle, Arata used the SUV throughout the day. He was driving the SUV to a friend's house after work when he struck Faubion.

Faubion ultimately commenced an action for damages against Arata and the Puccis under NRS 41.440, which imposes vicarious liability on motor vehicle owners when members of the owners' immediate family cause injuries arising from the express or implied permissive use of the owned vehicle.[2]

The Puccis moved the district court for summary judgment, arguing that NRS 41.440 is unconstitutional and, in any event, that Rocque Pucci was not an immediate family member within the

---

[1]As a minor, Arata lived with the Puccis. For a time after attaining his majority, Arata lived on his own, but he moved back into the Puccis' residence before the accident.

[2]NRS 41.440 provides as follows:

> Any liability imposed upon a wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family arising out of his or her driving and operating a motor vehicle upon a highway with the permission, express or implied, of such owner is hereby imposed upon the owner of the motor vehicle, and such owner shall be jointly and severally liable with his or her wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family for any damages proximately resulting from such negligence or willful misconduct, and such negligent or willful misconduct shall be imputed to the owner of the motor vehicle for all purposes of civil damages.

meaning of NRS 41.440.[3] In denying the motion, the district court found the following undisputed facts: that the Puccis owned the SUV involved in the accident; that the Puccis gave Arata express or implied permission to drive the SUV on the day of the accident; that Sherri Pucci was Arata's natural mother; and that Rocque Pucci was his stepfather. The court then concluded that NRS 41.440 supported the claim of liability against both Sherri and Rocque Pucci because a mother and a stepfather are immediate family members of a son; that NRS 41.440 is rationally related to a legitimate government purpose and, therefore, is not constitutionally infirm; and that, accordingly, the Puccis would be held jointly and severally liable for any damages caused by Arata's negligence.

At trial, a jury awarded Faubion approximately $5 million in damages, which the district court reduced to $3.5 million in accordance with a pretrial stipulation entered into by the parties. The district court subsequently denied a defense motion for judgment notwithstanding the verdict or for a new trial. This appeal followed.

## DISCUSSION

### Constitutionality of NRS 41.440

Faubion alleged below that the Puccis, as the vehicle's owners, were vicariously liable for Arata's negligence. In general, a vehicle owner is not responsible at common law for another person's negligent operation of the vehicle.[4] This rule is based upon the general principle that each person is accountable for his or her own legal fault and, in the absence of such fault, is not responsible for the actions of others. However, our 1922 decision in *Jones v. Golick* implicitly adopted an exception to this rule, known as the family purpose doctrine, which subjects the owner of a car to vicarious liability when the owner provides a vehicle for the family's general use for family purposes and when the vehicle is so used by a family member.[5] This doctrine represents a social policy gener-

---

[3]In the proceedings below, the Puccis and Arata were represented by separate counsel. Arata did not join in this motion for summary judgment.

[4]*Schneider v. Schneider*, 152 A. 498, 499 (Md. 1930); *Jones v. Golick*, 46 Nev. 10, 22-24, 206 P. 679, 682-83 (1922) (holding that an owner of a car is not liable for a driver's negligence in the absence of familial relationship or other theory imputing liability); *Hall v. Enterprise Leasing Co.*, 122 Nev. 685, 691, 137 P.3d 1104, 1108 (2006) (noting that absent an independent ground for liability, an owner is not per se vicariously liable for a user's negligence).

[5]46 Nev. at 22-24, 206 P. at 682-83. We disagree with Arata and the Puccis' assertion that Nevada never adopted the family purpose doctrine. While we never formally adopted the doctrine, in *Jones*, we implicitly acknowledged the existence of the doctrine in Nevada. *Id.*

ated in response to problems presented by widespread use of automobiles.[6] Specifically, the increasing number of automobile collisions led to more frequent situations in which the negligent driver was found to be judgment proof.[7]

In 1957, the Legislature expanded upon the family purpose doctrine by enacting NRS 41.440, which imposes vicarious liability upon a vehicle owner for a family member's negligence while driving:

> Any liability imposed upon a wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family arising out of his or her driving and operating a motor vehicle upon a highway with the permission, express or implied, of such owner is hereby imposed upon the owner of the motor vehicle, and such owner shall be jointly and severally liable with his or her wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family for any damages proximately resulting from such negligence or willful misconduct, and such negligent or willful misconduct shall be imputed to the owner of the motor vehicle for all purposes of civil damages.[8]

Although inartfully written, this statute is clearly broader than the common-law family purpose doctrine because it does not require that the vehicle be driven for a family purpose for vicarious liability to attach.

Arata and the Puccis contend that NRS 41.440, as interpreted by the district court, violates principles of substantive due process by imputing liability to the car owner solely on the basis of the owner's blood or stepparent relationship with the driver, and violates principles of equal protection by discriminating based on

---

[6]*Phillips v. Dixon*, 223 S.E.2d 678, 679 (Ga. 1976).

[7]*Id.*

[8]This statute is sometimes referred to as the Nevada ''family purpose statute.'' *White v. Yup*, 85 Nev. 527, 531, 458 P.2d 617, 619 (1969). Nevada's statute, however, by its express terms, contemplates a scope of liability beyond that traditionally addressed in other jurisdictions' family purpose doctrines. *See, e.g., Phillips v. Dixon*, 223 S.E.2d 678, 679 (Ga. 1976) (recognizing that under the family purpose doctrine ''when an automobile is maintained by the owner for the use and convenience of his family, such owner is liable for the negligence of a member of the family having authority to drive the car while it is being used for a family purpose'' (citing *Griffin v. Russell*, 87 S.E. 10 (Ga. 1915); *Cohen v. Whiteman*, 43 S.E.2d 184 (Ga. Ct. App. 1947))). As indicated above, Nevada has only implicitly embraced the doctrine as a matter of common law; thus, NRS 41.440 is the only explicit doctrinal construct imposing vicarious liability on a vehicle owner based upon familial relationships. *Jones v. Golick*, 46 Nev. 10, 22-24, 206 P. 679, 682-83 (1922). As also dis-

family relationships.[9] In making these challenges, they argue that this court should evaluate NRS 41.440 under a heightened level of scrutiny because NRS 41.440 implicates their fundamental right to associate in a household as a family.

Before turning to the merits of Arata and the Puccis' equal protection and due process challenges, we must identify the appropriate level of constitutional scrutiny to apply in evaluating the challenged statute. The scrutiny level we use depends on the nature and importance of the rights asserted and the classification the statute creates. Unless a statute interferes with a fundamental right or discriminates against a suspect class, it will survive an equal protection attack so long as the classification withstands "minimum scrutiny," *i.e.*, is rationally related to a legitimate governmental purpose.[10] Likewise, "a due process challenge requires only minimum scrutiny in the absence of a suspect classification or impingement on fundamental rights."[11] Thus, we discuss these claims together.

The United States Supreme Court has held that certain aspects of family autonomy such as the right to marry, the right to custody of one's children, and the right to keep the family together are fundamental liberty interests protected under substantive due process.[12] NRS 41.440, however, does not implicate any of these aspects of family autonomy. Rather, NRS 41.440 only addresses a vehicle owner's liability when loaning a vehicle to an immediate family member. Consequently, NRS 41.440 does not infringe upon a fundamental right. Moreover, NRS 41.440 effects no discrimination against a suspect class. Accordingly, the constitutional validity of this measure depends upon whether the classifications it creates are rationally related to a legitimate governmental purpose.

Under the prescribed low level of scrutiny, we are not limited to considering only the justifications actually asserted by the Legis-

---

cussed *supra*, the statute creates an exception to the general common-law rule in Nevada that owners of vehicles, absent an independent cause of action against them, are not legally responsible for the negligence of permissive users of owned vehicles. *Id.*

[9]U.S. Const. amend. XIV.

[10]*Sereika v. State*, 114 Nev. 142, 148-49, 955 P.2d 175, 179 (1998).

[11]*Id.* at 149, 955 P.2d at 179.

[12]*Quilloin v. Walcott*, 434 U.S. 246 (1978); *Moore v. East Cleveland*, 431 U.S. 494 (1977); *Loving v. Virginia*, 388 U.S. 1 (1967).

lature.[13] As we have recognized, "[i]t is well-settled under rational basis scrutiny that the reviewing court may hypothesize the legislative purpose behind legislative action."[14] We have further noted that " '[i]f any state of facts may reasonably be conceived to justify [the legislation], a statut[e] . . . will not be set aside.' "[15] While no legislative history exists indicating the Legislature's actual purpose for enacting NRS 41.440, we can conceive of at least two rational bases for the statute's enactment.

First, NRS 41.440 provides " 'an injured party, who is free of negligence, a cause of action against a financially responsible defendant.' "[16] Arata and the Puccis argue that better means exist to make an injured party whole. In this, they note that, under NRS 485.3091(1)(b), an owner's policy of liability insurance insures any person using the motor vehicle with the express or implied permission of the named insured. Where, as here, however, the damages caused by a negligent driver exceed the limits of the owner's liability policy, NRS 41.440 provides an additional means to make an injured party whole.[17]

Second, the Legislature could have concluded that imposing vicarious liability in circumstances such as those presented here would "encourage owners to exercise a greater degree of care when deciding whether to permit a financially irresponsible driver to use the family car."[18] In this, the Legislature could have concluded that a family member is generally in a far better position than a mere acquaintance to determine whether another family member is competent to drive the vehicle.[19] Certainly, the Puccis, having raised and lived with Arata for much of his life, were in a better position to determine his competency to drive.

---

[13]*Williams v. State*, 118 Nev. 536, 542, 50 P.3d 1116, 1120 (2002).

[14]*Boulder City v. Cinnamon Hills Assocs.*, 110 Nev. 238, 249, 871 P.2d 320, 327 (1994).

[15]*Sereika*, 114 Nev. at 149, 955 P.2d at 179 (quoting *State v. District Court*, 101 Nev. 658, 662, 708 P.2d 1022, 1025 (1985)).

[16]*White v. Yup*, 85 Nev. 527, 531, 458 P.2d 617, 619 (1969) (quoting *Michaelsohn v. Smith*, 113 N.W.2d 571, 574 (N.D. 1962)).

[17]The policy covering the SUV provided public liability limits of $100,000 per person injured in a single accident. The damages found by the jury exceeded $3.5 million.

[18]*Hermosillo v. Leadingham*, 13 P.3d 79, 84 (N.M. Ct. App. 2000).

[19]*Marcus v. Everett*, 239 N.W.2d 487, 491 (Neb. 1976) (recognizing one basis for the family purpose doctrine is the belief that "the head of the family is generally in a far better position to determine who is competent to drive the vehicle and to control or forbid its use by the members of his family").

Because NRS 41.440 is rationally related to legitimate government interests, we conclude the statute survives Arata and the Puccis' due process and equal protection challenges.[20]

## Scope of NRS 41.440

Having concluded that NRS 41.440 is constitutional, we must next consider whether the district court erred in imposing vicarious liability upon Rocque and Sherri Pucci under this statute.

Arata and the Puccis make several points with regard to the scope of NRS 41.440, which they stress was intended as a codification of the "family purpose doctrine."[21] Most conspicuously, they argue that vicarious liability of a vehicle owner under that doctrine should be restricted to that resulting from the wrongful acts of the vehicle owner's "dependents."[22] We disagree. Although NRS 41.440 is a statute in derogation of the common law governing general vehicle owner liability and family purpose liability, it clearly makes no distinction between dependent and emancipated children, adult or otherwise.[23] Referring, again, to the statute: "[a]ny liability imposed upon a wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family [of a motor vehicle owner] arising out of his or her driving and operating a motor vehicle" shall be imposed upon the motor vehicle owner. Because Arata is clearly the son of Sherri Pucci, the familial relationship between Arata and Sherri Pucci is sufficient to impose vicarious liability on Sherri Pucci.

The next question is whether the district court erred in imposing vicarious liability upon Rocque Pucci. NRS 41.440 does not specifically state that a stepparent-stepchild relationship is sufficient to impose liability. However, in addition to listing general family relationships to which vicarious liability applies, NRS 41.440 clarifies that it also applies to "other immediate member[s] of a family." Here, in imposing vicarious liability, the district

---

[20]We have also considered Arata and the Puccis' other constitutional arguments and conclude that they lack merit.

[21]*See White*, 85 Nev. at 531, 458 P.2d at 619 (indicating that the first purpose of NRS 41.440 is "the imposition of liability upon the owner of the car being used for family purposes").

[22]*See Jones*, 46 Nev. at 22-24, 206 P. at 683.

[23]*See Orr Ditch Co. v. Dist. Ct.*, 64 Nev. 138, 164, 178 P.2d 558, 570 (1947) (stating that "[a]nother important rule of statutory construction, very generally applied, is the rule which provides that statutes in derogation of the common law shall be strictly construed").

court concluded that a stepfather is an "immediate member of a family" within the meaning of NRS 41.440.

While this court has not had the occasion to address who is an "immediate member of a family," in *Jones v. Golick*, we recognized the following:

> "To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support."[24]

In *Jones*, which was decided before the enactment of NRS 41.440, the defendant in a property damage action and his immediate family lived with his mother-in-law and brother-in-law, sharing the household expenses but not supporting them.[25] The defendant loaned his automobile to the brother-in-law, who damaged another automobile in a collision.[26] This court refused to impose liability upon the defendant because the brother-in-law was not a member of the defendant's "family," since a "family" must have a head upon whom its other members are wholly or partially dependent.[27]

Under the definition of immediate family member set forth in NRS 41.440, it is unclear whether Rocque is liable as an "other immediate family member." While Arata lived with the Puccis and the Puccis paid Arata's car insurance, Rocque Pucci never formally adopted Arata. Given the conflicting evidence concerning whether a sufficient family relationship existed between Arata and Rocque Pucci, the district court erred in concluding, as a matter of law, that Arata was Rocque Pucci's family member. Whether a stepparent is an immediate family member in a particular case is a factual issue to be determined by the fact-finder. Therefore, we reverse that portion of the district court's judgment that, as a matter of law, Rocque Pucci is Arata's immediate family member within the meaning of the NRS 41.440. We remand this matter for a new trial solely on the issue of whether Rocque Pucci is an immediate family member of Arata.

## CONCLUSION

We conclude that NRS 41.440 is rationally related to a legitimate governmental purpose and, thus, survives a constitutional challenge, and that Sherri Pucci is vicariously liable under NRS

---

[24]46 Nev. at 23-24, 206 P. at 683 (quoting *Sheehy v. Scott*, 104 N.W. 1139, 1140 (Iowa 1905)).

[25]*Id.* at 22-23, 206 P. at 683.

[26]*Id.*

[27]*Id.* at 23-24, 206 P. at 683.

41.440.[28] However, we conclude the district court erred in concluding that Rocque Pucci is an immediate family member of his stepson. Accordingly, we affirm the judgment and order of the district court in part, reverse in part, and remand this matter for a new trial on the issue of whether Rocque Pucci is an immediate family member of Arata.[29]

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[28]Appellants also assert that several trial errors warrant a new trial. We conclude that the perceived errors do not warrant reversal and a new trial in this case.

[29]Based upon representations of Faubion's counsel at oral argument, we conclude that this matter presents an actual case in controversy. Faubion's attorney indicates that Arata and the Puccis have no arrangement with Faubion protecting them from the judgment entered below; *i.e.*, via an exchange of an assignment of the action against the insurer to Faubion in exchange for Faubion's covenant not to execute upon the judgment. Rather, counsel represents that Arata and the Puccis are prosecuting an independent action against their insurer concerning its failure to settle with Faubion for an amount within the applicable limits of their third-party liability coverage.